**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**NICOLE WATTS,**

    **Plaintiff,**

vs.                               **CASE NO. 4:21-cv-170-AW-MAF**

**MELINDA N. COONROD,
et al.,**

    **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

    The *pro se* plaintiff, Nicole Watts, a prisoner housed at Gadsden Correctional Facility, initiated this case on April 15, 2021, pursuant to 42 U.S.C. § 1983, and paid the $402 filing fee. ECF Nos. 1, 4. Plaintiff submitted her amended complaint on May 11, 2021. ECF No. 5. The Undersigned conducted an initial screening of the operative complaint, pursuant to 28 U.S.C. §§ 1915 and 1915A. For the reasons stated, it is recommended that the claims be DISMISSED, the request for injunctive relief be DENIED, and that the case be closed.

    **I.**    **Plaintiff's Amended Complaint, ECF No. 5.**

    Plaintiff's operative complaint is somewhat vague. As best can be determined, Plaintiff sues the Florida Commission of Offender Review

(FCOR); Melinda N. Coonrod, Commissioner Chair for FCOR; and Bershawn Johnson, a revocation specialist at FCOR, solely in their official capacities alleging that the sentence she received for a conditional release violation is contrary to the Thirteenth Amendment. ECF No. 5, pp. 2-3. Plaintiff admits she was sentenced to a ten-year prison term for four counts of grand theft stemming from Duval County Case Nos. 2010-CF-01456, 2010-CF-01903, 2010-CF-05055, and 2011-CF-09095.[1] Id., p. 5. Plaintiff claims this term was set to run consecutive to five months in county jail for contempt of court. See Duval County Case No. 2011-CF-09095, DE# 59.

On February 6, 2020, Plaintiff was released from prison pursuant to the "Conditional Release Florida Act" because she was not eligible for parole.[2] Id., p. 5. Plaintiff claims that a department representative failed to conduct a personal interview with her, as required by law, to determine a release plan including her plans for where she would reside and work. Id.

---

[1] The Court takes judicial notice of these cases as available online and are accessible at the following URL: https://core.duvalclerk.com/CoreCms.aspx?mode=PublicAccess. Access date: May 26, 2021.

[2] The Court takes judicial notice of Plaintiff's status as reported by the Florida Department of Corrections (FDOC) Offender Network, "Inmate Population Information Detail." See Fed. R. Evid. 201. According to the FDOC, Plaintiff was released on February 11, 2020. http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=D85938&TypeSearch=AI. Access date: April 22, 2021.

Plaintiff acknowledges she refused to sign the terms of the conditional release. Id., pp. 5-6. Plaintiff admits she was not eligible for conditional release because she had not yet served her sentence for the "contempt of court" conviction. Id., p. 6. Plaintiff was released from Gadsden Correctional Facility and was "handed over into the custody of Transportation." Id., p. 7.

On February 7, at 4:00 a.m., Plaintiff was admitted to the Duval County Jail to serve the five-month sentence. Id. Plaintiff states that she filed a complaint to the FCOR on March 12, 2020, alleging that her imprisonment was a violation of the Thirteenth Amendment. Id. However, Plaintiff claims that the response she received did not properly address her complaint. Plaintiff blames Defendant Coonrod for "failing to oversee the subordinates" but provides no set of facts attributable to Defendant Coonrod. Id.

Plaintiff states generally, that she was released without finances, transportation, and without a place to live. Id., p. 9. Plaintiff claims this left her vulnerable so that she was raped; however, she attributes no set of facts to any named defendant. Id. Review of the online records of the Jacksonville Sheriff's Office Inmate Information Search reveals that Plaintiff was

"admitted" to Duval County Jail, served 130 days for the contempt charge, and was "released" on June 20, 2020.[3]

Plaintiff admits that after five months being released, on November 10, 2020, she violated the terms of her conditional release when she left Orange County, Florida, to travel to Tifton, Georgia "for a family emergency." Id., p. 8. Plaintiff waited five days, until November 15, to report the travel to her parole officer and provide him with a copy of the related police report. Id., p. 8. Then, when Plaintiff reported to her parole officer on December 2, she was taken into custody for violating the terms of her release by leaving the state. Id., p. 8.

On December 8, Plaintiff "confessed to the violations" before an FROC "panel." Id. Defendant Johnson revoked Plaintiff's conditional release on March 3, 2021; and Plaintiff was sentenced to a prison term set to end on May 29, 2022. Id. Plaintiff attributes no other set of facts to Defendant Johnson. Plaintiff claims that this prison term exceeds her original end-of-

---

[3] Inmate information records from the Jacksonville Sheriff's Office Department of Corrections are available online at the following URL: https://inmatesearch.jaxsheriff.org/pgInmateDetailsPublic.aspx. Plaintiff's Jail Number is 2020003202; and her JSO ID is 503020. The record indicates Plaintiff's sentence was associated with Case No. 2011-CF-09095.

Case No. 4:21-CV-170-AW-MAF

sentence date by twenty-eight months. In Plaintiff's view, this is a direct violation of the Thirteenth Amendment.

As relief, Plaintiff asks the Court to amend the release procedures for the county correctional facilities to include resources for housing, transportation, and travel money. Id., p. 10. At the same time, Plaintiff concedes that the "conditional release program is written an accordance with the law." Id. Plaintiff also seeks an undetermined amount of monetary compensation for the loss of her personal property and mental damages. Finally, Plaintiff asks for the Court to initiate "a through investigation" of the FCOR procedures. Id.

## II.  Standard of Review

Plaintiff is a prisoner seeking redress against governmental entities, employees, or officers. Accordingly, her complaint is subject to screening under 28 U.S.C. § 1915A, which does not distinguish between IFP plaintiffs and non-IFP plaintiffs. See 28 U.S.C. § 1915A; see also Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007) (*per curiam*). Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A, a complaint must be dismissed if the court determines a complaint fails to state a claim upon which relief can be granted. See Wright v. Miranda, 740 F. App'x 692, 694 (11th Cir. 2018). In reviewing the complaint under § 1915(e), the court takes the allegations as

true and construes them in the most favorable light. See Hughes v. Lott, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

The same standard is used for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and § 1915(e)(2)(B)(ii). See Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). The court may dismiss a complaint that fails "[t] state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). "To '[a]void dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." Wright, 470 F. App'x at 694 (citing Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017) (*per curiam*)).

Complaints filed by *pro se* prisoners are held to "[l]ess stringent standards than formal pleadings drafted by lawyers[.]" Haines v. Kerner, 404, U.S. 519, 520 (1972) (*per curiam*). However, although a *pro se* pleading is liberally construed, it still must "[s]uggest that there is some factual support for a claim." Id. "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

Case No. 4:21-CV-170-AW-MAF

### III. Impermissible Shotgun Pleadings

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks and alterations omitted). "Further, the allegations in the complaint 'must be simple, concise, and direct,'" Fed. R. Civ. P. 8(d)(a), and the complaint must 'state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances,' Fed. R. Civ. P. 10(b)." LaCroix v. W. Dist. of Ky., 627 F. App'x 816, 818 (11th Cir. 2015).

Here, the Complaint is largely a narrative of legal conclusions. "A 'shotgun pleading' - one in which 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief'—does not comply with the standards of Rules 8(a) and 10(b)." Id. (citations omitted). The Eleventh Circuit "has repeatedly condemned shotgun pleadings." Id. (citing PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 806 n.4 (11th Cir. 2010)). Vague pleadings which assert legal conclusions rather than facts violate Rule 8 and are insufficient to proceed.

Case No. 4:21-CV-170-AW-MAF

The Eleventh Circuit has identified four rough types or categories of shotgun pleadings. See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (citations omitted). The most common type is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Id. at 1321. Next, is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Id. at 1322. The third type of shotgun pleading does not separate "into a different count each cause of action or claim for relief." Id. at 1323. "Fourth, and finally, there is" the pleading which asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. "The unifying characteristic . . . is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id.

The Court previously advised Plaintiff in its order to amend that shotgun pleadings were impermissible and that she was required to attribute factual allegations of acts or omissions to each named defendant. ECF

No. 3. As narrated above, Plaintiff brings forward claims against the defendants but provides no set of facts attributable to them for a constitutional violation. Legal conclusions are insufficient. While a plaintiff is ordinarily allotted an opportunity to amend, she is not entitled to multiple opportunities to amend nor when it is otherwise futile to amend as outlined below.

### IV.   Futility of Claims under Heck v. Humphrey, 512 U.S. 477 (1994).

In its prior order to amend, the Court advised Plaintiff that her claims would likely be barred by Heck v. Humphrey. ECF No. 3. The Court also explained to Plaintiff that the law was well established that habeas corpus was the exclusive remedy to challenge the fact or duration of confinement. Id. The crux of Plaintiff's claims is that she is incarcerated in violation of her constitutional rights. Specifically, the calculation of her sentence is incorrect.

A prisoner may not bring a claim for damages under 42 U.S.C. § 1983 if a judgment in favor of the plaintiff would necessarily imply the invalidity of her conviction. The most obvious example of an action barred by Heck is one in which the plaintiff seeks damages directly attributable to conviction or confinement. "The Court's purpose was to limit the opportunities for collateral attack on [criminal] convictions because such collateral attacks undermine the finality of criminal proceedings and may create conflicting resolutions of

issues." <u>Abella v. Rubino</u>, 63 F.3d 1063, 1065 (11th Cir. 1995) (internal citations omitted). Thus, unless a plaintiff can demonstrate that the conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," the claim must be dismissed. <u>Heck</u>, 512 U.S. at 487.

Here, Plaintiff admits that she violated the terms of her conditional release by leaving the state; she "confessed to the violations" at her hearing before the FCOR; her conditional release was, therefore, revoked; and she was sentenced to a prison term. <u>See</u> ECF No. 1, generally. Plaintiff disagrees with the length of her sentence. The proper remedy to challenge the term of her imprisonment is to file a habeas petition pursuant to 28 U.S.C. § 2254. As of the date of the drafting of this Report, Plaintiff has not filed any habeas petitions or other appeals related to the revocation of her conditional release.

Here, Plaintiff's current incarceration is the result of her admitted violation and is pursuant to the determination by the FCOR. The Florida Supreme Court explained, although a criminal case must be proven beyond a reasonable doubt, a probation violation need only be proven by a preponderance of the evidence. <u>See</u> <u>Russ v. State</u>, 313 So. 2d 758, 760 (Fla. 1975); <u>Robinson v. State</u>, 468 So. 2d 1106 (Fla. 2d DCA 1985). Proof

sufficient to support a criminal conviction is not required to support a discretionary order revoking supervised release from prison. Morrissey v. Brewer, 408 U.S. 471 (1972); State ex rel. Florida Parole and Probation Comm'n v. Helton, 313 So. 2d 413 (Fla. 1st DCA 1975). Thus, this action should be dismissed per Heck.

## V. Respondeat Superior & Eleventh Amendment Immunity

To the extent that Plaintiff is attempting to raise claims against Defendants under a theory of vicarious liability or respondeat superior, ordinarily a § 1983 action will not support such a claim. Plaintiff only claims that Defendant Coonrod is responsible for employees of the FCOR and that Defendant Johnson revoked her conditional release. This, without more, is insufficient to raise any constitutional claim under a theory of vicarious liability or respondeat superior.

Generally, a person cannot be held liable as a supervisor under § 1983 based solely on the actions and/or omissions of others. See Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995). "[L]iability under § 1983 may not be based on the doctrine of respondeat superior." Craig v. Floyd County, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003); see Denno v. Sch. Bd. of Volusia Cty., 218 F.3d 1267, 1276 (11th Cir. 2000), cert. den'd, 531 U.S. 958 (2000). Instead, a

government entity may be liable "only where the [government entity] itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Plaintiff must show that Defendants had a "policy or custom" of deliberate indifference that led to the violation of her constitutional right. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). The custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Craig, 643 F.3d at 1310 (citation omitted). Even under a theory of "failure to protect," Plaintiff would be required to demonstrate a genuine issue of fact regarding deliberate indifference. See Deshaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989). But negligence, or a lack of due care under the circumstances, is insufficient to show a violation of the Constitution. Davidson v. Cannon, 474 U.S. 344, 347 (1986). Proof of deliberate indifference entails something more than negligence but is satisfied by something less than actions undertaken with an intent to cause harm. Farmer, 511 U.S. at 835-36.

Plaintiff has not presented any material facts in the operative complaint regarding any practice, custom, or policy driving any constitutional violation. Moreover, official capacity claims for damages against an individual

employee of a state agency are likely subject to Eleventh Amendment Immunity. Florida's sovereign immunity extends to its agencies, subdivisions, or officers. See Alabama v. Pugh, 438 U.S. 781, 782 (1978); Fitzgerald v. McDaniel, 833 F.2d 1516 (11th Cir. 1987). That "bar exists whether the relief sought is legal or equitable." Papasan v. Allain, 478 U.S. 265, 276 (1986). Naming a government official in his official capacity is the equivalent of naming the governmental entity itself. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). A state official, however, may be sued in his official capacity when the suit alleges a constitutional violation by the official, acting in his official capacity and seeks only prospective injunctive relief. See Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011).

The State of Florida is immune from monetary damages based upon the Eleventh Amendment. Gamble v. Fla. Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1512-13 (11th Cir. 1986). This is so because the Eleventh Amendment of the U.S. Constitution bars suit against a state in federal court absent valid congressional override, waiver of immunity, or consent to suit. See Wusiya v. City of Miami Beach, 614 F. App'x 389, 393 (11th Cir. 2015). Section 1983 does not abrogate state sovereign immunity for damage suits; and Florida has not waived its immunity from § 1983 suits. See id. A state and an agency of a state (i.e. the Florida Department of

Case No. 4:21-CV-170-AW-MAF

Corrections) are thus immune from liability under § 1983. See Williams v. Robbins, 153 F. App'x 574, 576 (11th Cir. 2005). Of course, suits for nominal damages against state officers in their official capacities are included in this Eleventh Amendment bar. See Simmons v. Conger, 86 F.3d 1080, 1086 (11th Cir. 1996) (finding district court erred in awarding nominal damages against a judge sued in his official capacity because the relief was barred by Eleventh Amendment). "Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The court considers: "whether the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the alleged transgression. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Keith v. Dekalb Cty., 749 F.3d 1034 (11th Cir. 2014). In short, Plaintiff must show Defendants Coonrod and Johnson violated her constitutionally protected rights and the right was "clearly established" at the time.

Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser

v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). While the Court is required to accept factual allegations in a complaint as true, is is not required to accept Plaintiff's legal conclusions as true.

For the reasons stated previously, Plaintiff's complaint fails to state any claim of a constitutional violation against Defendants. Moreover, Plaintiff's claims for compensatory damages are barred.

## VI. Mental and Emotional Damages

To the extent Plaintiff seeks mental or emotional damages, they are not recoverable in this action. Pursuant to § 1983, a plaintiff may recover damages for monetary loss, physical pain and suffering, mental and emotional distress, impairment of reputation, and personal humiliation. Slicker v. Jackson, 215 F.3d 1225, 1231 (11th Cir. 2000). However, under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Thus, pursuant to § 1997e(e), a prisoner bringing a § 1983 action must demonstrate a physical injury that is more than *de minimis* in order to recover compensatory or punitive damages for mental or emotional injury suffered while in custody. Harris v. Garner, 190 F.3d 1279, 1287 (11th Cir. 1999), reh'g en banc granted, opinion vacated, 197 F.3d

1059 (11th Cir. 1999), reinstated in relevant part on reh'g, 216 F.3d 970 (11th Cir. 2000).

Here, Plaintiff does not allege that she suffered any physical injury while in the custody of the state prison or county jail. Nor does she allege that any named defendant caused her any physical injury. Accordingly, this claim fails.

## VII. Injunctive Relief

Plaintiff asks the Court to amend the release procedures for county correctional facilities to include resources for housing, transportation, and travel money. It is within the sound discretion of the district court to grant or deny a preliminary injunction, which will not be disturbed absent a clear abuse of discretion. Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002). See also LSSi Data Corp. v. Comcast Phone, LLC, 696 F.3d 1114, 1119 (11th Cir. 2012). The standard for issuing a preliminary injunction is the same as is required for a temporary restraining order. See California v. American Stores Co., et al., 492 U.S. 1301 (1989); Johnson v. U.S. Dep't of Agriculture, 734 F.2d 774 (11th Cir. 1984).

In order for Plaintiff to be entitled to a preliminary injunction, she must show:

1. a substantial likelihood of success on the merits;

2. the order is necessary to prevent irreparable injury;

3. the threatened injury outweighs the harm that the order would cause to the non-movant; and

4. the order is not adverse to the public interest.

<u>DeYoung v. Owens</u>, 646 F.3d 1319, 1324 (11th Cir. 2011); <u>see also</u> <u>Winter v. Nat. Res. Def. Council</u>, 555 U.S. 7, 20 (2008). District courts within the Eleventh Circuit are applying the standard set forth in <u>Winter</u>. See <u>Madera v. Detzner</u>, Case No. 1:18-cv-152-MW/GRJ, 325 F. Supp. 3d 1269, 1278 (N.D. Fla. Sept. 10, 2018) (citing <u>Winter</u> as the governing standard for a preliminary injunction). A preliminary injunction is "not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000).

> The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies. A showing of irreparable harm is the *sine qua non* of injunctive relief. The injury must be neither remote nor speculative, but actual and imminent. An injury is 'irreparable' only if it cannot be undone through monetary remedies. The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Northeastern Florida Chapter of Ass'n of General Contractors v. Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal citations and quotations omitted).

Typically, the individual or entity from whom the injunctive relief is sought must be a party to the underlying action. See In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Laboratories, 72 F.3d 842, 842 (11th Cir. 1995); see Fed. R. Civ. P. 65(d) (stating that a preliminary injunction or temporary restraining order is binding on "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)").

First, the Court finds that Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of her claims. As previously explained, Plaintiff's claims are likely futile under Heck v. Humphrey, Monell, and the Eleventh Amendment. Second, Plaintiff fails to show the second factor, that is, that she will subject to irreparable harm if the county correctional facilities fail to include resources for housing, transportation, and travel money. Plaintiff admits that the conditional release program is written in accordance with the law and does not suggest that the conditional release program is otherwise illegal or unconstitutional. The third factor, balancing

potential harm to the parties, clearly weighs more heavily in favor of the Defendants as issuance of the requested injunction would severely undermine the authority of correctional authorities to promulgate rules and regulations regarding the release of prisoners. In essence, granting the relief requested by Plaintiff would provide an inmate the means to circumvent the administration of the financial resources of the county correctional facilities. Finally, the public interest element of the equation is, at best, a neutral factor or weighs in favor of Defendants. Plaintiff has failed to show she is entitled to injunctive relief.

## VIII.    Conclusion and Recommendation

For the reasons stated above, it is respectfully recommended that Plaintiff's claims be DISMISSED as barred by Heck v. Humphrey, the Eleventh Amendment, and because it is otherwise futile to amend. Plaintiff's claims for injunctive relief should be DENIED. Finally, it is further recommended that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IN CHAMBERS at Tallahassee, Florida, on June 4, 2021.

s/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 4:21-CV-170-AW-MAF

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).